UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LINDA L. BUTLER,

                    Plaintiff,

v.                                                          1:16-CV-0500
                                                            (TWD)
COMM'R OF SOC. SEC.,

                    Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF STEPHEN J. MASTAITIS, JR.             STEPHEN J. MASTAITIS, JR.,
  Counsel for Plaintiff                         ESQ.
1412 Route 9P
Saratoga Springs, NY 12866

U.S. SOCIAL SECURITY ADMIN.                     CATHARINE L. ZURBRUGG,
OFFICE OF REG'L GEN. COUNSEL – REGION II        ESQ.
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Linda L. Butler

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g), are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 21, 26.)  For the reasons set forth

below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for

judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's

disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1951, making her 39 years old at her alleged onset date of March 4, 1991, and 45 years old at the date last insured of December 31, 1996.  Plaintiff has a 12th grade education and she reported past work as a bookkeeper, dispatcher, secretary, stenographer, and waitress.  Generally, Plaintiff alleges disability consisting of fibromyalgia, back and neck pain, arthritis, colitis, headaches, and hypoglycemia.

### B.     Procedural History

Plaintiff applied for Disability Insurance Benefits on January 26, 2007.  Plaintiff's application was initially denied on September 13, 2007, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at hearings before ALJ Carl E. Stephan on June 10, 2009, and August 19, 2009.  On September 18, 2009, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 374-80.[1])  On March 4, 2011, the Appeals Council denied Plaintiff's request for review.  (T. 1-3.)  Plaintiff appealed to the United States District Court for the Northern District of New York, and District Judge William G. Young remanded the case for further administrative proceedings, finding that the ALJ had failed to properly develop the record by not obtaining a complete copy of a February 7, 1996, letter from treating rheumatologist Neal Greenstein, M.D., and that the evidence in the record was insufficient for the ALJ to make a determination as to Plaintiff's abilities to lift, carry, stand, and walk.  (T. 419-23.)  This Court also found remand warranted

---

[1]     The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

because the ALJ failed to properly reconcile his treatment of Plaintiff's testimony regarding involvement in dog breeding, and because the Appeals Council failed to consider the new evidence submitted on January 19, 2011. (T. 424-25.) The Appeals Council remanded the case pursuant to this Court's March 1, 2013, decision and order. (T. 429.) Plaintiff attended a subsequent hearing with the ALJ on April 1, 2014. On July 7, 2014, the ALJ again issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 320-28.) On February 29, 2016, the Appeals Council denied Plaintiff's request for review, noting that Plaintiff had not filed written exceptions to the ALJ's decision and that there was no reason for the Appeals Council to assume *sua sponte* jurisdiction, making the ALJ's decision the final decision of the Commissioner. (T. 309-11.)

C.      **The ALJ's Decision**

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 322-28.) First, the ALJ found that Plaintiff was insured for disability benefits under Title II until December 31, 1996. (T. 322.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 4, 1991, the alleged onset date. *Id.* Third, the ALJ found that Plaintiff's lumbar spine degenerative changes and fibromyalgia are severe impairments, while her colitis, hypoglycemia, arthritis, and headaches are not severe impairments. (T 322-23.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 323.) More specifically, the ALJ considered Listing 1.04 (disorders of the spine) and 14.09 (inflammatory arthritis). *Id.* Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of sedentary work. *Id.* Sixth, the ALJ found that Plaintiff is able to perform her past relevant work as a bookkeeper. (T. 327.) Seventh, and

finally, the ALJ alternatively determined that Plaintiff was not disabled at Step Five based on application of the Medical-Vocational Guidelines. (T. 327-28.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts four arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ did not obtain an assessment from an examining physician to support such a finding. (Dkt. No. 21 at 10-16, 24-25.[2]) Specifically, Plaintiff also argues that the ALJ erred in weighing the opinion evidence, including the opinions from treating chiropractor Brad Elliott, D.C., and primary care physician John Cetner, M.D. *Id*. at 16, 19-22, 25-26.

Second, Plaintiff argues that the ALJ failed to properly evaluate the records and opinions from Plaintiff's treating rheumatologist in compliance with this Court's previous decision and order and the Appeals Council's remand order. *Id*. at 16-18, 26-27. More specifically, Plaintiff argues that the ALJ failed to conduct a detailed discussion or analysis of the new treatment evidence submitted to the Appeals Council as directed by this Court in its previous decision, and failed to assign a specific weight to the treating rheumatologist's findings and opinions. *Id*. at 17-18.

Third, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's fibromyalgia. *Id*. at 10-14, 20-22. More specifically, Plaintiff argues that the evidence supported a diagnosis of fibromyalgia under the requirements of SSR 12-2p, that the ALJ misunderstood or misinterpreted the disabling effects of Plaintiff's fibromyalgia when assessing whether Plaintiff met or equaled a Listed impairment, and ignored evidence related to Plaintiff's fibromyalgia. *Id*.

---

[2]     Page numbers in citations to the parties' briefs refer to the actual page numbers of the brief rather than the page number assigned by the Court's electronic filing system.

Fourth, and finally, Plaintiff argues that the credibility determination is not supported by substantial evidence. *Id*. at 14-16, 23-24, 27-30.

Generally, Defendant asserts four arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the RFC determination was supported by substantial evidence, asserting that the medical record failed to establish disabling limitations and that the ALJ properly weighed the opinions from the treating physicians and other sources. (Dkt. No. 26 at 5-10.)

Second, Defendant argues that the ALJ adequately analyzed Dr. Greenstein's treatment notes and complied with the previous remand order that required the ALJ to obtain a complete copy of Dr. Greenstein's February 7, 1996, report. *Id*. at 14-15.

Third, Defendant argues that the ALJ properly considered the evidence related to fibromyalgia, including evidence of non-severe impairments such as colitis, hypoglycemia, and headaches that may have been related to that condition, and properly considered whether Plaintiff's fibromyalgia met or equaled a Listed impairment. *Id*. at 11-14.

Fourth, and finally, Defendant argues that the ALJ's credibility determination was supported by substantial evidence because Plaintiff's allegations were inconsistent with the objective medical evidence, because Plaintiff's work history was not sufficient on its own to merit a finding that her statements were credible, and because the ALJ weighed conflicts in the evidence as to inconsistent reports of Plaintiff's ability to perform daily activities. *Id*. at 15-18.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d

856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see also Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (internal quotation and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Whether the RFC Determination is Supported By Substantial Evidence and the ALJ Properly Weighed the Opinion Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (*See* Dkt. No. 26 at 5-10.)  To those reasons, the Court adds the following analysis.

In terms of weighing opinion evidence, the Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c).  "Thus, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as 'it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case "the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id*. (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  "Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation."  *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)), *adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's

opinion.'" *Greek*, 802 F.3d at 375) (alteration in original) (quoting *Burgess*, 537 F.3d at 129.

"The failure to provide 'good reasons for not crediting the opinion of a claimant's treating

physician is a ground for remand.'" *Id.* (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as

those for assessing treating sources, with the consideration of whether the source examined the

claimant replacing the consideration of the treatment relationship between the source and the

claimant. *See* 20 C.F.R. § 404.1527(c)(1)-(6). Additionally, when weighing opinions from

sources who are not considered "medically acceptable sources"[3] under the regulations, the ALJ

must consider the same factors as used for evaluating opinions from medically acceptable

sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r

of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL 2329939.

Dr. Cetner provided multiple opinions related to Plaintiff's ability to work. On April 4,

1991, Dr. Cetner indicated that Plaintiff had been unable to work since March 4, 1991, though he

estimated she would be able to return to work on April 18, 1991. (T. 271.) However, on June 4,

1991, Dr. Cetner indicated that it was unknown when she would be able to return to work. (T.

270.) On August 10, 1991, Dr. Cetner estimated that Plaintiff would be able to return to work on

September 15, 1991. (T. 268.) On May 28, 2007, Dr. Cetner noted that he had begun treating

Plaintiff in November 1988 and that he provided treatment since that time for chronic lower back

pain, fibromyalgia, headaches, and irritable bowel syndrome. (T. 207.) He noted that

fibromyalgia had been diagnosed in 1996, and that she had a normal objective clinical

---

[3]     Medically acceptable sources are noted to include the following: licensed physicians;
licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified
speech-language pathologists. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

examination with no abnormality of gait, though she did have subjective reports of pain and fatigue. (T. 210-11.) Dr. Cetner concluded that there were no objective findings of disability and indicated she needed a consultation with a rheumatologist or physiatrist; he opined that Plaintiff had no limitations. (T. 212.)

The ALJ afforded significant weight to Dr. Cetner's opinions, finding that they were based on a "long-term and well-documented treatment relationship" and consistent with Dr. Cetner's own records that showed "few objective findings other than limited lumbar range of motion" and prescriptions for non-narcotic pain relievers. (T. 325.) However, the ALJ noted that other evidence, including reports from other physicians and the objective medical imaging, supported greater limitations for lifting, carrying, standing, or walking than the limitations included in Dr. Cetner's opinion. *Id.*

On January 14, 1997, chiropractor Dr. Elliott noted that "[t]he functional assessment made by my office was six hours of standing, up to two hours of sitting (total – at one hour increments) pedal operation and a 15 [pound] lifting limit allow for simple household activities of daily [living.]" (T. 253.) Dr. Elliott noted also that Plaintiff would require "near total rest" frequently on days following when she performed such activity. *Id.* Dr. Elliott concluded that Plaintiff had fibromyalgia and opined she was disabled. (T. 253-54.) On August 10, 2009, Dr. Elliott indicated he had been treating Plaintiff since April 26, 1995, and opined Plaintiff had the following restrictions: sit, stand, and walk for one hour each at a time and for two hours each total in an eight-hour workday; lift and carry up to 10 pounds frequently and 15 pounds occasionally; perform simple grasping and fine manipulation with her hands; use leg controls for short-term activity only; occasionally bend and squat; never crawl, climb, or reach; a moderate restriction in driving and a total restriction in exposure to unprotected heights, being around

moving machinery, and dusts, fumes and gases; and the need to change positions often and lie down periodically to relieve pain. (T. 249-51.) Dr. Elliott indicated Plaintiff could only work two days per week for three hours per day. (T. 250.) The ALJ afforded Dr. Elliott's opinion significant weight to the extent it supported limitations in Plaintiff's abilities to stand and walk, but declined to afford it greater weight because the objective findings, including Dr. Elliott's own treatment notes from the relevant period, did not establish significant environmental or postural restrictions or show that Plaintiff was limited to sitting only two hours or working a total of only six hours per week. (T. 325-26.) The ALJ also indicated that Dr. Elliott did not perform a comprehensive evaluation during the relevant time period, and that Plaintiff had not sought treatment for anything related to a pulmonary or other disorder that would indicate the environmental restrictions that Dr. Elliott opined. *Id.*

Plaintiff argues that the RFC for a full range of sedentary work is not supported by substantial evidence because there was no assessment from an examining physician supporting that finding and because the ALJ erred in weighing the opinion evidence, particularly the opinions from primary care physician Dr. Cetner and treating chiropractor Dr. Elliott. (Dkt. No. 21 at 16, 19-22, 24-26.)

Plaintiff's arguments that the ALJ "cherry-picked" only those parts of Dr. Cetner's opinion that were consistent with the RFC is unavailing. *Id*. at 16. Plaintiff argues that the ALJ committed error by affording Dr. Cetner's opinion significant weight and yet "apparently credits Dr. Cetner only with regard to the claimant's capacity for sitting." *Id*. However, Plaintiff ignores the fact that Dr. Cetner's opinion was significantly less restrictive than the ALJ's RFC. Consequently, to the extent that Plaintiff appears to argue that the ALJ should have adopted more limitations from Dr. Cetner's opinion, that argument does not help her appeal. Rather than

"cherry-picking" as Plaintiff asserts, the ALJ properly considered Dr. Cetner's opinion in conjunction with the rest of the evidence in the record and relied on it only to the extent it was consistent with that evidence. *Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.") (alteration in the original) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)); *see also West v. Comm'r of Soc. Sec.*, No. 5:15-CV-1042 (GTS/WBC), 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016) (citing *Matta*, 508 F. App'x at 56), *adopted by* 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016).

Additionally, although Dr. Cetner did provide insurance-related documents in which he opined Plaintiff was disabled from March 4, 1991 to September 15, 1991, these opinions do not necessitate a finding of disability, particularly as they do not suggest that Plaintiff's conditions were of a disabling severity for at least 12 months. *See* 20 C.F.R. § 404.1505(a) (defining disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). Further, opinions that a claimant is "disabled," without more, are not entitled to any special deference because disability is an issue reserved to the Commissioner. *Mortise v. Astrue*, 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010) ("[A]n opinion concerning the ultimate issue of disability, from any source, is reserved to the commissioner."); *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 267 (N.D.N.Y. 2013) (holding "[i]t was proper to give little weight to [a doctor's] opinion, which concerned issues reserved to the Commissioner," where the opinion in question consisted of statements that the plaintiff was severely disabled and not competitively unemployable)

(alteration in original) (citing 20 C.F.R. § 416. 927(d)(1)).  Plaintiff has not shown, even if the ALJ did commit an error in weighing Dr. Cetner's opinions, that any such error prevented a finding that Plaintiff was more limited than accounted for in the RFC.  *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding that, although the ALJ improperly discounted the treating physician's opinion, that error was harmless because the ALJ nonetheless included those limitations in the RFC).  Plaintiff's arguments related to Dr. Cetner's opinions therefore do not show any basis for questioning the RFC assessment.

In relation to Dr. Elliott's opinion, Plaintiff argues that the ALJ failed to show how Plaintiff retained the ability to sit for six hours in an eight-hour workday rather than the two hours opined by Dr. Elliott.  (Dkt. No. 21 at 22-25.)  However, the ALJ specifically noted that this conclusion was based on a lack of evidence supporting such a greater limitation.  (T. 326.)  Plaintiff, throughout her memorandum, repeatedly notes to findings regarding her trigger points as a result of fibromyalgia, yet fails to indicate how the existence of trigger points is necessarily inconsistent with an ability to sit for six hours in an eight-hour workday.  (Dkt. No. 21, at 10-27.)  Although an adjudicator may not rely on an absence of objective medical findings as the sole basis for assessing limitations related to fibromyalgia,[4] there still must be some evidence other than Plaintiff's unsubstantiated subjective reports of disability in order to merit a finding that fibromyalgia imposes disabling limitations.  *See Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (noting that while fibromyalgia is "'a disease that eludes [objective] measurement,' [] mere diagnosis of fibromyalgia without a finding of severity of symptoms and limitations does not mandate a finding of disability . . .") (alterations in original) (internal citations omitted).

---

[4]     The ALJ's assessment of Plaintiff's fibromyalgia will be discussed in greater detail in Section III.C of this Decision and Order.

The record does substantiate physical limitations, but does not suggest that the ALJ's limitation to sedentary work was unreasonable or unsupported by substantial evidence. A CT scan of the lumbar spine from May 5, 2011, showed bulging of multiple discs, mild hypertrophic changes, and some encroachment of the right neural foramen, but no evidence of a herniated disc. (T. 289-90.) Neurological surgeon Fred Scialabba, M.D., did note that Plaintiff reported that sitting aggravated her low back pain "tremendously," but observed no neurological abnormalities, normal strength, sensation, and reflexes, and only a positive straight leg raise on the right. (T. 187.) Notably, Dr. Scialabba instructed her to "stay off her feet as much as possible." *Id.* On March 26, 1991, Dr. Cetner observed limited range of motion in the lumbar spine with negative straight leg raising. (T. 264.) On April 16, 1991, Dr. Scialabba observed weakness in the right extensor hallucis longus ("EHL") muscle, but otherwise the examination was normal. (T. 186.) An MRI of the lumbar spine from April 22, 1991, showed mild degenerative disc disease with right-sided foraminal stenosis. (T. 189.) On May 14, 1991, Dr. Scialabba noted that EMG testing was needed to determine whether there was any nerve root compression, and opined that there was little indication for surgery. (T. 184-85.) On August 21, 1991, Dr. Cetner noted that Plaintiff moved gingerly and had pain with changes in position, but straight leg raising was negative. (T. 264.) On March 5, 1992, Dr. Cetner observed she had diminished lower back range of motion and pain in her lower back with straight leg raising. (T. 263.)

On March 19, 1992, William Byrt, M.D., observed Plaintiff had mild discomfort sitting in the chair, a normal gait, mild tenderness in the L4-L5 region of her lower back, limited forward flexion, pain with bending, tenderness in the right sciatic notch, slightly diminished strength in the right EHL muscle, and a mildly positive left straight leg raise. (T. 296.) On

14

November 18, 1992, Plaintiff reported being unable to sit for any length of time and was observed to move stiffly on and off the exam table, but she had normal deep tendon reflexes bilaterally. (T. 263.) On December 22, 1992, David Welch, M.D., observed that Plaintiff was obviously uncomfortable, stood slightly bent forward, could get her fingers within three inches of the floor but came back up to standing position slowly, had pain with twisting, minimal paralumbar tenderness on the right and slight muscle tightness, and had normal reflexes and sensation. (T. 295.) Dr. Welch opined that Plaintiff might be able to return to work if she could get adequate pain control, though she would need to start at half-time. *Id*. On January 13, 1993, Plaintiff was observed to move stiffly with painful range of motion in her lower back, though it was noted she was not attending physical therapy. (T. 262.)

On February 2, 1993, Plaintiff had less tenderness but continued to have difficulty bending; she walked stiffly and moved slowly and cautiously due to what Dr. Welch indicated appeared to be an inflammatory process in her sacroiliac joints and buttock area. (T. 293.) On April 26, 1995, Plaintiff was observed to have limited range of motion in her lower back. (T. 555.) On November 18, 1995, Dr. Elliott observed Plaintiff frequently had moderate antalgia due to back and leg pain and had decreased lumbar range of motion, moderate-to-severe tenderness in the cervical-thoracic junction and lumbar junction, active trigger points, muscle spasms, and a positive straight leg raise on the right. (T. 299.) On February 7, 1996, rheumatologist Dr. Greenstein observed slight discomfort with extremes of neck motion, diffuse painful tender points in the suboccipital area, bilateral trapezius, medial aspect of the scapula, lower lumbar spine, anterior chest wall, and trochanteric bursa, limited lumbar flexion, and normal strength and sensation; Dr. Greenstein prescribed Elavil. (T. 550-51.) On March 5, 1996, Dr. Greenstein observed painful tender points and increased the Elavil. (T. 304.) On

August 27, 1996, Dr. Greenstein again noted painful tender points, though her strength and reflexes were normal; he indicated she should try Paxil again for her fibromyalgia symptoms. (T. 303.)

Although the treatment evidence related to Plaintiff's lumbar spine impairment and fibromyalgia shows significant symptoms in her lower back and the presence of tender points, it does not clearly substantiate Plaintiff's allegations that she was limited to sitting for only two hours in an eight-hour workday, nor does it justify a finding that the ALJ's conclusion of an ability to perform sedentary work was unsupported by substantial evidence. To the contrary, the above treatment evidence and the ALJ's consideration of the opinion evidence provide substantial evidence to support his conclusion.

Although the ALJ did rely to some extent on the objective medical evidence despite the presence of fibromyalgia, such reliance is not improper under the fact-specific circumstances in this case.[5] Plaintiff's primary source of impairment throughout most of the relevant period was her lumbar spine impairment; the majority of her treatment from 1991 to 1995 was related to her lumbar spine and associated lower back and leg pain and other symptoms. It does not appear that Plaintiff was observed to have tender points suggestive of fibromyalgia until November 1995, and she was not diagnosed with fibromyalgia until February 1996. (T. 299, 550-51.) Following her diagnosis of fibromyalgia, Plaintiff had two further visits with rheumatologist Dr. Greenstein in March 1996 and August 1996 prior to her date last insured. (T. 303-04.) Dr. Greenstein again noted tender points and was working on finding a medication for pain control, but did not otherwise indicate anything suggestive of significant limitations, other than noting

---

[5]     As indicated in Footnote 3, *supra*, fibromyalgia will be discussed more thoroughly in Section III.C of this Decision and Order.

Plaintiff's reports of "some waxing and waning flu like symptoms." *Id.* On March 5, 1996, Dr. Greenstein noted that "extensive review of symptoms questioning was otherwise unremarkable" for anything more than her initial musculoskeletal complaints. *Id.* Given that Plaintiff's main documented impairment was one which does ordinarily require objective evidence of symptoms, it was not unreasonable for the ALJ to consider the objective evidence when determining the RFC and weighing the opinion evidence, despite the presence of fibromyalgia. Additionally, at the hearing in 2009, Plaintiff testified that she was unable to sit for long due to pain in her back and hip and discussed how one of the physicians had suggested surgery, but there was only a small chance it would help her. (T. 28-30.) This suggests that the problems with sitting that Plaintiff reported were in fact related to her lumbar spine impairment more so than her fibromyalgia, in which case consistency with the objective evidence was a relevant and proper consideration when determining the extent of limitation in Plaintiff's ability to sit.

Finally, Plaintiff asserts that it was improper for the ALJ to conclude that Plaintiff retained the ability to sit for a duration required for sedentary work without any opinion supporting that finding. (Dkt. No. 21 at 24-25.) However, Plaintiff's assertion ignores the fact that Dr. Cetner, Plaintiff's long-term treating physician, did in fact opine that Plaintiff had no limitations in her ability to sit. (T. 212.) It is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence. *Quinn*, 199 F. Supp. 3d at 712; *West*, 2016 WL 6833060, at *5. Although neither Dr. Cetner nor Dr. Elliott opined the precise level of limitation included in the RFC assessment, the ALJ was entitled to balance these opinions against the evidence, which is precisely what he did in this case. The ALJ's citations to the medical and other evidence indicate

that the ALJ relied on such information in concluding Plaintiff remained able to sit for six hours total in an eight-hour workday.

For all these reasons, the weight the ALJ afforded to the opinion evidence in the record is supported by substantial evidence and consistent with applicable legal standards, and remand is not required on this basis.

### B. Whether the ALJ Properly Evaluated the Evidence from Treating Rheumatologist Dr. Greenstein and Considered the Evidence Submitted to the Appeals Council in Accordance with the Previous District Court Order

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (*See* Dkt. No. 26 at 14-15.) To those reasons, the Court adds the following analysis.

"The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (internal citation and quotation marks omitted.) "ALJs have acknowledged throughout the years that the remand instructions they receive from the federal district court are the law of the case." *Gladle v. Astrue*, 12-CV-0284 (NAM), 2013 WL 4543147, at *3 (N.D.N.Y. 2013) (quoting *Thompson v. Astrue*, 583 F. Supp. 2d 472, 475 (S.D.N.Y. 2008)) (internal quotation marks and citation omitted). "Similarly, the Commissioner is implicitly limited by any findings of the district court regarding the application for disability benefits." *Id.* (internal quotation marks and citation omitted).

The regulations provide that, upon remand, an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the

Appeals Council's remand order." 20 C.F.R. § 404.977(b). Accordingly, reviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand. *See Mortise v. Astrue*, 713 F. Supp. 2d 111, 120-24 (N.D.N.Y. 2010) (remanding based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule); *Gorman v. Astrue,* 08-CV-0251 (NAM/VEB), 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (remanding, in part, based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule).

In this case, District Judge William G. Young had previously remanded Plaintiff's claim due to the ALJ's failure to develop the record, as noted previously in this Decision and Order, by not obtaining a complete copy of a February 7, 1996, letter from treating rheumatologist Dr. Greenstein and because the evidence in the record was insufficient for the ALJ to make a determination as to Plaintiff's abilities to lift, carry, stand, and walk. (T. 419- 23.) This Court also found remand warranted because the ALJ failed to properly reconcile his treatment of Plaintiff's testimony regarding involvement in dog breeding, and because the Appeals Council failed to consider the new evidence submitted on January 19, 2011. (T. 424-25.) The Appeals Council remanded the case pursuant to this Court's March 1, 2013, Decision and Order. (T. 429.)

Contrary to Plaintiff's assertions, the ALJ complied with the remand order. Notably, the ALJ obtained a complete copy of Dr. Greenstein's February 7, 1996, report and included it in the record. (T. 550-51.) More than that, the ALJ explicitly discussed this report in detail in the decision. (T. 325.) Although Plaintiff argues that this discussion was insufficient because the ALJ did not assign specific weight to Dr. Greenstein's "findings and opinions," Dr. Greenstein's report did not include any opinion or statement of Plaintiff's work-related functioning that the

ALJ was required to specifically weigh. (T. 550-51.) Dr. Greenstein did indicate that Plaintiff had a diagnosis of fibromyalgia based on her history and the physical exam he performed, but the ALJ acknowledged and accepted that finding when he found fibromyalgia to be a severe medically determinable impairment. (T. 322-23, 551.) Nothing in the ALJ's treatment of Dr. Greenstein's report is inconsistent with this Court's previous remand order.

In terms of developing the record and considering new evidence, the current administrative transcript contains more recently submitted treatment records from Dr. Elliott that included treatment during the relevant period. (T. 553-65.) These allowed the ALJ to have better insight into whether Dr. Elliott's opinion was supported by his own treatment of Plaintiff. Additionally, the ALJ also considered the evidence that District Judge Young had found that the Appeals Council erroneously failed to consider. (T. 397-402, 424-25.) The ALJ's addition and consideration of all of this evidence addresses District Judge Young's concerns regarding an insufficiency of evidence related to Plaintiff's abilities to lift, carry, stand, and walk that would prevent a reasoned determination of whether Plaintiff was disabled. Lastly, the ALJ followed the Court's remand order in that he did not assert that Plaintiff's dog breeding activities reflected negatively on her credibility. (T. 323-27.) The ALJ's decision therefore addressed all of the concerns highlighted by the remand order and this Court does not see any deficiency in the ALJ's compliance with that order.

For all these reasons, the ALJ properly complied with the remand order and evaluated the new evidence, and remand is not required on this basis.

## C.     Whether the ALJ Properly Assessed Plaintiff's Fibromyalgia

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (*See* Dkt. No. 26 at 11-14.)  To those reasons, the Court adds the following analysis.

SSR 12-2p guides the Commissioner's assessment of fibromyalgia, indicating in detail the criteria that the Social Security Administration requires to establish fibromyalgia as a medically determinable impairment and how the ALJ should consider that impairment at the subsequent steps in the sequential disability analysis.  *See* SSR 12-2p, 2012 WL 3104869 (July 25, 2012).  When determining residual functional capacity based on fibromyalgia, the ALJ is not entitled to rely solely on objective evidence, or lack thereof, related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record.  *See Campbell v. Colvin*, No. 5:13-CV-0451 (GLS/ESH), 2015 WL 73763, at *5 (N.D.N.Y. Jan. 6, 2015) (citing SSR 12-2p, 2012 WL 3104869, at *3).  "A 'mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability,' but denying a fibromyalgia-claimant's claim of disability simply because such evidence is not corroborated by objective medical evidence is reversible error."  *Id*. at *6 (citing *Grenier v. Colvin*, No. 6:13-CV-0484 (GLS), 2014 WL 3509832, at *3-4 (N.D.N.Y. July 14, 2014)).

Throughout her memorandum, Plaintiff continuously re-iterates that the medical evidence substantiated that she had fibromyalgia, citing to evidence of trigger points in particular.  (Dkt. No. 21 at 10-12, 19-22, 25.)  Contrary to Plaintiff's assertion that "[f]ibromyalgia is recognized as a disabling condition when the record demonstrates the establishment of the diagnosis under criteria issued by the *American College of Rheumatology*," a claimant is not entitled to disability benefits merely because she has been diagnosed with fibromyalgia.  *See id*. at 25.  Rather, even

though fibromyalgia does not produce the objective signs of most other impairments, there still must be some evidence substantiating the extent of pain and limitation caused by fibromyalgia; otherwise, the SSA would be required to take any claimant with fibromyalgia at their subjective word. The fact that Plaintiff's fibromyalgia met the criteria to establish a medically determinable impairment pursuant to the requirements of SSR 12-2p does not mean that her fibromyalgia is automatically disabling, and her assertions of such a proposition represent a severe misinterpretation of SSR 12-2p.

Although Plaintiff cites *Green-Younger v. Barnhart*, 335 F.3d 99 (2d Cir. 2003) for her assertion that a diagnosis of fibromyalgia is inconsistent with an ability to perform sedentary work, her reliance on that case is misplaced. In *Green-Younger*, the Second Circuit found, in part, that the ALJ erred in failing to accept the treating physician's diagnosis of fibromyalgia because the ALJ essentially required the plaintiff to show clinical findings greater than what was required under the established medical guidelines. *Green-Younger*, 335 F.3d at 106-07. The same case is not presented here, as the ALJ accepted that Plaintiff had a valid diagnosis of fibromyalgia. (T. 322.) Additionally, the ALJ in *Green-Younger* placed a much greater emphasis on a lack of specific objective findings that showed a fundamental misunderstanding of the nature of fibromyalgia when rejecting the treating physician's diagnosis and functional opinion, whereas the ALJ in the case before this Court provided a much more balanced analysis of all the evidence considering all of Plaintiff's impairments. *Green-Younger*, 335 F.3d at 107-09. This is apparent most particularly in the ALJ's choice to decline to afford controlling weight to Dr. Cetner's opinion based on "Dr. Greenstein's report that the claimant has clear signs of fibromyalgia." (T. 325.)

As noted previously in Section III.A of this Decision and Order, the majority of Plaintiff's treatment during the relevant time period was for her lumbar spine impairment, not fibromyalgia. The treatment evidence related to fibromyalgia prior to the December 31, 1996, date last insured consists primarily of the November 18, 1995, treatment summary and examination from Dr. Elliott and the three treatment notes from rheumatologist Dr. Greenstein. However, these records do not establish any obvious functional restrictions beyond the sedentary work accounted for in the RFC. On November 18, 1995, Plaintiff reported to Dr. Elliott that she had neck pain, stiffness, difficulty sleeping, irritability, back pain and "pins and needles" numbness in her right foot and toes. (T. 298.) Plaintiff reported to Dr. Greenstein on February 7, 1996, that she had low back pain from a fall in the past and subsequently developed pain in her neck, shoulders, upper back, right upper extremity, and her right knee, as well as stiffness in her hands with prolonged use and some lower extremity numbness when seated too long. (T. 550.) Plaintiff also reported stiffness, stress, and fatigue with irritable bowel symptoms, headaches, and poor sleep. *Id.* Plaintiff's reports of fibromyalgia-related symptoms to these sources, even if taken as entirely credible, do not necessarily contradict the ALJ's finding that Plaintiff remained able to perform sedentary work, especially in conjunction with the objective evidence related to her lumbar spine impairment. There is simply nothing in the record to show that Plaintiff's fibromyalgia was so severe prior to the date last insured as to be disabling or more limiting than the ALJ determined in the RFC assessment.

At the 2009 hearing, Plaintiff reported symptoms such as headaches and manifestations of irritable bowel syndrome that were related to her fibromyalgia and that were generally consistent with the co-occurring conditions she described to Dr. Greenstein. (T. 30-32.) However, the record does not contain any treatment for these conditions. Although Plaintiff

23

argues that the ALJ erred in failing to find these impairments severe or to consider them when determining the RFC, this Court finds no error in the ALJ's severity finding or his finding that these impairments did not impose any additional work-related limitations, because there is simply no medical evidence to substantiate that they existed at the severity Plaintiff alleged prior to the date last insured. The ALJ did acknowledge these impairments but concluded they were either not medically determinable or not severe due to the lack of substantiating evidence. This finding is supported by substantial evidence.

Plaintiff also generically argues that the ALJ misinterpreted or ignored the disabling effects of fibromyalgia when assessing the Listing of Impairments and "misappli[ed] the medical evidence and lay testimony to the criteria of Listing 14.09." (Dkt. No. 21 at 13.) However, Plaintiff completely fails to adduce what evidence shows that Plaintiff demonstrated the criteria or equivalent symptoms to meet or equal any Listing section, and this Court did not find any such evidence. Plaintiff's cursory arguments on this issue therefore fail. *See Davis v. Astrue,* 6:09-CV-0186 (LEK/GHL), 2010 WL 2545961, at *3 (N.D.N.Y. June 3, 2010) (indicating that the burden is on the plaintiff to present medical findings that his or her impairments match a Listing or are equal in severity to a Listing); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (superceded by statute on other grounds) (indicating that a plaintiff must show that her impairment meets or equals all of the specified medical criteria of a Listing section).

For all these reasons, the ALJ properly assessed Plaintiff's fibromyalgia, and remand is not required on this basis.

24

**D.     Whether the Credibility Determination is Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (*See* Dkt. No. 26 at 15-18.)  To those reasons, the Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations.  "An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence."  *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant," and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Id*. at 206 (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, citing to the medical treatment

evidence, instances where Plaintiff did not appear to follow up with recommended testing or treatment, and Plaintiff's conservative treatment with non-narcotic pain relievers and non-steroidal anti-inflammatories. (T. 324-26.)

Although Plaintiff makes a number of objections to the ALJ's consideration of Plaintiff's subjective pain complaints, many of these are simply generic statements of law without any indication as to how she asserts the ALJ ran afoul of these legal standards. (Dkt. No. 21 at 15-16, 28-31.) Plaintiff does cite to selected sections from Plaintiff's testimony regarding her "very limited ability to engage in routine activities of daily living," yet the ALJ was not required to fully credit such limited activities where, as here, they were inconsistent with the medical evidence. Additionally, Plaintiff's testimony at the hearings and her completion of function reports occurred 10 or more years after her date last insured and, when reviewing these reports, it is often difficult to discern whether Plaintiff was reporting as to her functioning for the period between her alleged onset date and her date last insured, or as to her functioning current to the time she was testifying. Although Plaintiff did report to Dr. Welch in December 1992 that she could only sit less than one hour, stand or walk 10 to 15 minutes, and had to depend on others for driving, shopping, and carrying out tasks, those reports of near-total incapacitation are not consistent with the medical evidence, including Dr. Welch's own examination on that date and his opinion that she might be able to return to work if they could find a way to adequately control her pain with anti-inflammatory medications. (T. 295.) Although the ALJ did not specifically discuss Plaintiff's activities of daily living, his thorough discussion of the medical evidence suggests that he found Plaintiff's reports of extremely limited daily activities to be inconsistent with such evidence. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) ("Where 'the evidence of record permits [the court] to glean the rationale of an ALJ's

decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'") (alteration in original) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Additionally, Plaintiff's assertion that "[t]he testimony of a claimant with a good record [] is entitled to full credibility" is not an accurate statement of the law. (Dkt. No. 21 at 15.) Although a good work history can be probative of a claimant's credibility, it is only one factor to balance in the credibility analysis. *Ellis v. Comm'r of Soc. Sec.,* No. 3:11-CV-1205 (GTS/ATB), 2012 WL 5464632, at *12 (N.D.N.Y. Sept. 7, 2012) ("Although work history may be deemed probative of credibility, it is one of the many factors to be considered.") (citing *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012); *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011)). Without determining whether Plaintiff's work history was in fact so good as to show an attachment to the work force that would be supportive of her credibility, the ALJ did not err in failing to find Plaintiff credible based on her work history because he provided other reasons to support the adverse credibility finding. *See Schlichting*, 11 F. Supp. 3d at 206-07 (finding harmless error in the ALJ's adverse inference of a failure to pursue treatment where the credibility analysis as a whole was supported by substantial evidence).

The ALJ provided multiple specific reasons for finding Plaintiff's allegations not entirely credible that are based on the evidence in the record. In light of these reasons, this Court declines to re-weigh the evidence in search of a different conclusion. For all these reasons, the credibility determination is supported by substantial evidence, and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 21) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 26) is

**GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 29, 2017
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge